371 P.2d 798

Morris C. MASSEY, Plaintiff-Appellee,

v.

BEACON SUPPLY COMPANY, a Corporation, and Lee Barrett, Defendants-Appellants.

No. 7030.

Supreme Court of New Mexico.

May 24, 1962.

Tansey & Rosebrough, Farmington, for appellants.

Modrall, Seymour, Sperling, Roehl & Harris, Allen C. Dewey, Silas G. Henry, Jr., Albuquerque, and James L. Brown, Farmington, for appellee.

COMPTON, Chief Justice.

This is a negligence action brought by plaintiff against Beacon Supply Company and Lee Barrett, a former employee of Beacon Supply Company, to recover for personal injuries and medical expenses as the result of an automobile accident in Farmington, New Mexico, on September 4, 1956. No service was had on Barrett but he testified for Beacon Supply Company at the trial. Defendant company answered and filed a counterclaim for damages to its automobile. A pre-trial conference determined the issues to be agency, negligence, contributory negligence, unavoidable accident and damages. The cause was tried to the court without a jury. This appeal is taken from a judgment for plaintiff against Beacon Supply Company in the amount of $69.92 as special damages for medical expenses and $6,000 as general damages for injuries, disability, pain and suffering, past and future. Hereinafter Beacon Supply Company will be referred to as appellant and the plaintiff below will be referred to as appellee.

The accident occurred at the intersection of Airport Drive and Apache Street. The appellee was driving north on Airport Drive which was a through street. Barrett was driving appellant's car west on Apache Street which was posted with a stop sign where it intersected Airport Drive. Approximately 70 yards south of the intersection on Airport Drive there were two signs, one posting a speed limit and another indicating a curve ahead. The testimony is disputed as to whether the sign gave the speed limit as 25 or 35 miles per hour. Airport Drive, as alternate Highway 666, curved to the west at the intersection of Apache Street, or "Y'd" off so that the intersection was not a part of the alternate highway for those continuing north on Airport Drive. Whether Airport Drive was also a state highway as it continued north was in conflict. Appellee testified he was proceeding at about 30 miles per hour and that the appellant's auto failed to stop at the stop sign. The point of impact was in the northwest quadrant of the intersection. Appellee's car left about 15 feet of skid marks and thereafter came to a stop about 170 feet distant in a lot on the northwest corner.

Appellant's car left skid marks 6 to 8 feet before the stop sign on Apache Street and skid marks beginning 2 feet west of the sign and, after the impact, came to a stop up on the curb of the northeast corner of the intersection facing south and slightly east. The evidence is conflicting as to whether Barrett came to a stop at the sign before proceeding into the intersection.

As a result of the accident, appellee suffered injury to his knees which were jammed into the dash board by the impact. The medical and other testimony is that appellee now has an arthritic condition in his knees which is painful and somewhat disabling; that it is permanent and can be expected to get progressively worse.

With respect to the matter of agency, Barrett was employed by appellant as a counterman from 7 a.m. to 5 p.m. Another employee, a field representative by the name of Shackleford to whom a car was assigned for his use at all times, sometime after 5 p.m. on the day in question was making a delivery to Cuba, New Mexico. Barrett was off duty and went along for his own pleasure. On the return trip Shackleford became sleepy and asked Barrett to drive the car, which he did. Barrett drove into Farmington from the east, went beyond appellant's place of business, beyond Shackleford's home, beyond his own home, and, at the time of the accident, was within five or six blocks of the house of a friend where he had intended to pick up his, Barrett's car,

in order to have his own transportation home.

Appellant first attacks the following findings and conclusion of the trial court:

Finding No. 7. "Airport Road was posted for a 35 mile per hour speed limit applicable at the point of intersection of Apache Street."

Finding No. 8. "The Massey automobile was traveling at a speed under 35 miles per hour."

Conclusion No. 5. "The plaintiff, Massey, was not negligent."

In addition to appellant's contention that these findings and conclusion are not supported by substantial evidence, it states that finding No. 8 is inconsistent with the physical facts contained in finding No. 10, as follows:

Finding No. 10. "The vehicle driven by plaintiff laid down 10 to 15 feet of skid marks before striking the vehicle of defendant and after striking defendant's vehicle and turning it completely around, plaintiff's vehicle traveled 170 feet out into a vacant lot."

It is the position of appellant that Airport Drive, south of the intersection in question, was a state highway, that the highway followed a curve to the west before reaching the point in the intersection where the accident occurred, that even if the post-

ed speed limit for the highway was 35 miles per hour, which it denies, then appellee by proceeding north of the highway on Airport Drive was beyond the place where the highway speed limit was applicable and, therefore, violated a city ordinance by driving 30 miles an hour in a 25 mile zone. The record indicates that the parties stipulated that Airport Drive was a state highway up to and around the curve to the west, but there is a complete lack of evidence as to whether Airport Drive as it continued north was a city, county, or state road. The trial court indicated this was a matter of proof, but no map of the city was introduced in evidence. In view of the convincing evidence that Airport Drive was posted at 35 miles per hour 70 yards before reaching the intersection, and a complete lack of authoritative evidence that this speed limit was not applicable to Airport Drive as it continued straight north, there is substantial evidence to support finding No. 7.

With respect to finding No. 8 there was no testimony that the appellee was traveling at a greater rate of speed than 30 miles an hour. In view of the physical facts enumerated in finding No. 10, appellant asserts that it is impossible for appellee to have been traveling under 35 miles an hour, and seeks to invoke the rule that when physical facts are so opposed to oral testimony as to make it inconceivable that any such thing could have occurred, this court will set aside a judgment based on such oral testimony as contrary to the weight of the evidence.

This court has held that oral testimony, when measured by the physical facts, will not be rejected merely because of apparent improbability. It is only where the facts testified to are utterly at variance with well-established and universally recognized physical laws and, therefore, inherently impossible, or incredible of belief that they will be rejected. Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214. The evidence indicates that on the impact appellee's knees struck the dashboard, jarred him loose from the brakes and that he did not reapply the brakes but guided the car as it continued under its own momentum until it came to a stop 170 feet from the point of impact. In order to overcome conflicting testimony, physical facts must so speak as to show the inherent improbability of the accident occurring as testified to and be such that a reasonable mind must reject the conflicting testimony as wholly impossible of belief. Alexander v. Cowart, 58 N.M. 395, 271 P. 2d 1005; Ortega v. Koury, 55 N.M. 142, 227 P.2d 941. We are unable to say that under the circumstances here the fact that appellee's car laid down 10 to 15 feet of skid marks before striking appellant's car and turning it completely around and thereafter traveled 170 feet before coming to a stop, is so inherently improbable or incredible of belief that appellee's testimony that he was going under 35 miles an hour

was not entitled to any credibility or weight. The rule as to incontrovertible physical facts is applicable only in clear cases. Larsen v. Bliss, 43 N.M. 265, 91 P. 2d 811. These physical facts are not such as would leave room for no other conclusion than appellee must have been going more than 35 miles per hour and, therefore, we find no inconsistency between finding No. 8, which is supported by substantial evidence, and the court's finding No. 10.

We come next to the contention of appellant that there is not substantial evidence to support the following finding and conclusions:

Finding No. 17. "The defendant, Lee Barrett, was employed by the Beacon Supply Company and was acting within the scope of and in the course of his employment at the time of the collision."

Conclusion No. 6. "Lee Barrett was an employee and agent of the defendant Beacon Supply Company and was operating said vehicle within the scope of his employment and agency at the time of the collision."

Conclusion No. 7. "The issues are found in favor of the plaintiff and against the defendant, Beacon Supply Company, as to the complaint and on the counterclaim."

It is appellant's further contention that finding No. 17 is wholly inconsistent with the following findings:

"12. That Lee Barrett was employed as a counterman or warehouseman by defendant six days a week from 7 a. m. to 5 p. m."

"13. That Dale Schackleford and Lee Barrett departed for Cuba, New Mexico on September 4, 1956, after 5:00 p. m. and that Lee Barrett was than off work for defendant and on his own time."

"14. The driver of defendant's car, Lee Barrett, had gone along on a delivery to Cuba, New Mexico, with Dale Shackleford, defendant's salesman, purely for his own pleasure, with implied consent of the defendant, Beacon Supply Company."

"15. That at the time of the accident and the place where it occurred, Lee Barrett had driven defendant's car past his residence, and past the residence of Dale Shackleford, and was proceeding to the home of a girl friend to get his personal automobile."

"16. That Lee Barrett at the time of the collision was driving the automobile at the request of and in behalf of Dale Shackleford, a fellow employee of the defendant, Beacon Supply Company."

With respect to the claim of inconsistency, we experience no difficulty in reconciling finding no. 17 with the other findings in question. Findings nos. 12, 13

and 14 set forth the facts preceding the time Barrett became agent for Shackleford and finding no. 16 the circumstances by which he became such agent and came within the scope of his employment. It is important to bear in mind in this connection that Barrett and Shackleford were fellow-employees of appellant. The field trip was undisputedly undertaken by Shackleford in the course of his employment. That the field trip from Farmington to Cuba and return was in the course of the employment is also not disputed. That one employee of appellant had the implied consent to accompany, and to drive a car assigned to, another employee of appellant in the course of appellant's business is clear from the testimony. If Shackleford was within the course of his employment in returning to Farmington in appellant's car and requested Barrett, a fellow-employee, who had gone along purely for his own pleasure and with the implied consent of the employer, to drive for him and in his behalf, as the court found, we cannot say that Barrett was not then acting as agent for Shackleford in furtherance of the business of Shackleford's employer, and since that employer was also Barrett's employer, that Barrett was not also acting within the scope of and in the course of his own employment. Where a servant is authorized or apparently authorized to substitute another servant of the principal, such substituted servant has power to subject the principal to liability as would any other of the principal's servants. Restatement of the Law, Agency 2nd, § 81(b), page 206.

Finding no. 17, however, says that Barrett was within the scope of his employment *at the time of the collision.* Therefore, the charge of inconsistency must be levelled primarily at finding no. 15. Appellant apparently takes the position that, from a reading of finding no. 15, as a matter of law, there was a fatal deviation or departure prior to the accident. This position has no merit.

The liability of a master for the acts of a servant depends on the degree of deviation and all the attendant circumstances. Bell v. Martin, 241 Ala. 182, 1 So.2d 906; 57 C.J.S. Master & Servant § 574(d) (1), 35 Am.Jur., Master & Servant, pages 989, 600. Engel v. Davis, 256 Ala. 661, 57 So.2d 76, quoting from Ritchie v. Waller, 63 Conn. 155, 28 A. 29, 38 Am.St.Rep. 361, stated:

"'In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving

merely a question of fact, to be left to the jury or other trier of such questions.' \* \* \*"

The same rule was adopted in Dafoe v. Grantski, 143 Neb. 344, 9 N.W.2d 488, directed specifically to the use of automobiles. The issue of deviation has been held to be a matter of law where there is no evidence that the master has authorized, condoned or approved the independent undertaking; or where it is marked and continuous and in no way called for in the execution of the master's business but indulged in only for the personal pleasure of the servant. Zumwalt v. Harper, 309 Ky. 723, 218 S.W.2d 955; Nelson v. Broderick & Bascom Rope Company, 53 Wash.2d 239, 332 P.2d 460.

■ Appellant contends that finding no. 17 is a mixed finding and conclusion. Perhaps so; but it is a finding of ultimate fact which, if supported by substantial evidence, refutes any unusual deviation here and thus any seeming inconsistency disappears. Any doubts as to the meaning of the findings must be resolved to support the judgment. Hogan v. City of Hot Springs, 58 N.M. 220, 269 P.2d 1102. The purpose of findings of fact is to set out the ultimate facts of the case, and they must be read together and the conclusions of law flow therefrom. Hay v. New Mexico State Highway Department, 66 N.M. 145, 343 P.2d 845.

Viewed in the light most favorable to supporting finding no. 17 we have the testimony of the manager of appellant that it was not unusual for an inside employee to accompany a field man into the field to make a delivery, and that on the return of employees from a trip like the one in which Barrett participated it was propably true that "the other man would have to go to his place of residence" or to get a means of transportation, depending on where the transportation was located. Thus we find implied authority for Shackleford, had he been driving, to get Barrett home or to a reasonable place to pick up his own transportation. By the same token, Barrett had the same authority while acting in the scope of his employment by delegation from Shackleford. With respect to field trips, the testimony supports the fact that a field man was considered to be in the course of his employment until his return home. The record only discloses that the deviation here from the normal route was a matter of blocks and supports the fact that while there was a departure from the normal route there was no departure from the implied authority to do so. This departure was not wholly independent in character, or indicative of an utter abandonment of the employment, or one which retained no reasonable connection with the authorized course of employment so as to absolve appellant as a matter of law. Leuthold v. Goodman, 22 Wash.2d 583, 157 P.2d 326.

This is in line with the New Mexico law as set forth in White Auto Stores v. Reyes, (U.S.C.A., 10th Cir.), 223 F.2d 298 and Miera v. George, 55 N.M. 535, 237 P.2d 102 with respect to course of employment, although these cases involve different factual situations. The return of both employees to their homes or to a reasonable place to pick up transportation of their own was fairly and naturally to be regarded as arising out of and incidental to the employment.

Further, the manager of appellant testified that when he has an employee who is injured on the job it is a part of his duty to make a report of those injuries; that he made a report of injuries suffered by Barrett in the accident, in which report he stated that Barrett was returning from a field trip. In answer to the question as to whether it was his opinion that Barrett was hurt on the job, he said:

"A. I would say that he wasn't hurt on the job as such, as what his normal job would be. I would say that he was not doing something that would have been unusual, in other words."

Barrett testified he was injured in the accident, hospitalized, and off from work but that he continued to receive his pay during that time.

Finding no. 17 being supported by substantial evidence it is binding on this court, and conclusions nos. 6 and 7, which naturally follow, must stand.

Finally, appellant contends that the general damages of $6,000 awarded by the trial court for the disability and the past, present and future pain and suffering by appellee are manifestly excessive as a matter of law and are not supported by substantial evidence.

■ That this court will grant relief from excessive awards and verdicts is established; but in determining whether the award is excessive we will not weigh the evidence but only look to see whether the evidence, viewed in the light most favorable to appellee, affords substantial support for the award. Vivian v. Atchison, Topeka and Santa Fe Railway Co., 69 N.M. 6, 363 P.2d 620, and Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757. If it does, and there is no specific finding of an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact-finder, then the award will not be disturbed on appeal. Hall v. Stiles, 57 N.M. 281, 258 P.2d 386; Asbury v. Yellow-Checker Cab Company, 64 N.M. 372, 328 P.2d 941, and Montgomery v. Vigil, 65 N.M. 107, 332 P. 2d 1023.

■ Thus, bearing in mind that there is no standard fixed by law for measuring pain and suffering, Rivera y. Atchison, Topeka and Santa Fe Railway Co., 61 N.M. 314, 299 P.2d 1090 and Mathis v. Atchison, Topeka and Santa Fe Railway

Co., 61 N.M. 330, 300 P.2d 482, and considering the evidence of appellee's disability, and his life expectancy of about 33 years, we cannot say the award is excessive as a matter of law, or that there is any indication that it was made as the result of a mistaken measure of damages. Nor, having examined the findings of the trial court as to the injuries, do we find any inconsistency as contended by appellant.

The judgment will be affirmed. It is so ordered.

CARMODY and CHAVEZ, JJ., concur.

MOISE and NOBLE, JJ., not participating.