[No. 44846. En Banc. November 16, 1978.]

JERRY O. HOUSER, *Petitioner*, v. THE CITY OF REDMOND, *Respondent.*

*John P. Cogan, Edwards & Barbieri, Malcolm L. Edwards,* and *Charles K. Wiggins,* for petitioner.

*Richard J. Glein* and *Clinton, Fleck, Glein & Brown,* for respondent.

UTTER, J.—Petitioner, a former employee of the City of Redmond, sued Redmond, alleging interference with his contract of employment. His trial court award of $30,000 was reversed by the Court of Appeals, which held that he could not assert an interference claim against a party to the contract at issue. We affirm the judgment of the Court of Appeals, and hold that petitioner has failed to assert a legally sufficient claim against Redmond.

Houser is a former member of the Redmond Police Department and was terminated in June 1972 for recording the private conversations of fellow officers without their consent or knowledge, in violation of RCW 9.73.030. According to testimony of witnesses at petitioner's civil service hearing, the recordings were designed to provide him with a record of the derogatory remarks made by fellow officers about the chief of police and others. After making the recordings, he would inform those who had made the derogatory remarks of the existence of the recordings. This was followed by a warning that the recordings would be delivered to the chief of police if the persons whose remarks had been recorded ever caused the petitioner any difficulty.

Petitioner's recording practices engendered some hostility among his fellow officers. On a Saturday in April 1972, the head of the detective division, off duty at the time, broke into petitioner's locker and applied acid to the tape recorder. Two of his assistants, also off duty, witnessed the incident, while a fourth officer arrived on the scene just after the destruction was accomplished. After discovering the destruction, the petitioner reported it, and the chief of police instituted an investigation. He routinely appointed the head of the detective division to conduct the investigation with the assistance of the two previously mentioned assistants. Thus, the parties in fact responsible for the destruction were in charge of the investigation.

In the course of investigation proceedings, petitioner voluntarily surrendered a tape and the recorder. That tape contained some of the illegally recorded conversations.

When the chief became aware that petitioner's recording habits violated state law, he dismissed him from the force. Plaintiff appealed the dismissal to the Civil Service Commission. The commission held a hearing to review the propriety of the dismissal at which witnesses testified regarding petitioner's recording habits. The progress of the investigation into the vandalism of his locker and recorder, though not directly at issue in the proceedings, was briefly the subject of discussion at the hearing. The head of the detective division falsely testified that he had been unsuccessful in solving the break-in.

The Civil Service Commission determined that petitioner's dismissal was the appropriate and proper disciplinary action for his law violations. He appealed this decision to the Superior Court, which affirmed it.

The true facts surrounding the break-in were beginning to unravel about this time. Near the time of the hearing, the fourth police officer with information regarding the vandalism contacted the Redmond city attorney, purported to invoke the attorney-client privilege, and related the details of the break-in incident. The city attorney took no action on this information for some time. Finally, at the urging of the fourth officer, a meeting was held at which that officer, the city attorney, the mayor, and the chief of police were present.

Eventually, after further delay, the information regarding the break-in became public. The detective who committed the break-in resigned from the force, and the three officers who had knowledge of the break-in, and who had participated in the aftermath, were demoted with a reduction in pay.

Based upon the revelations regarding the break-in, petitioner moved to vacate the Superior Court judgment and for a remand to the Civil Service Commission for further proceedings. The superior court judge ruled orally that the judgment would be vacated and the case remanded, but died before a formal order was entered. Plaintiff withdrew

his motion to vacate at that time and instead filed this independent action in tort.

This case was filed solely against the City, and not against any of the participants in these events individually. The only theory presented at trial, and the only theory submitted to the jury, was that of interference with petitioner's employment contract. Thus, the only threshold legal issue at trial was whether the City of Redmond itself could be held liable for interfering with his contract of employment with the City. Denying a motion for summary judgment, the trial judge instructed the jury that petitioner could legally recover from the City on the interference theory. The jury returned a verdict for $30,000 in favor of petitioner, which award was reversed by the Court of Appeals. He appealed to this court, alleging that the Court of Appeals erred in concluding as a matter of law that he cannot recover from the City on this interference claim. Because we affirm the Court of Appeals and hold that petitioner cannot recover from Redmond for tortious interference, we do not reach numerous other issues which were the subjects of appeals and cross appeals.

■ Recovery for tortious interference with a contractual relation requires that the interferor be an intermeddling third party; a party to a contract cannot be held liable in tort for interference with that contract. *Calbom v. Knudtzon*, 65 Wn.2d 157, 396 P.2d 148 (1964); *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 277 P.2d 708 (1954). This limitation certainly does not leave persons remediless against parties to a contract; the remedy available against a party to the contract for wrongful action on its part, or on the part of its agents acting within the scope of their employment, is an action for breach of contract. *Hein v. Chrysler Corp., supra.*

Petitioner seeks to avoid the force of *Hein* and the logic of the rule that one cannot be held liable for *inducing* oneself to breach a contract, but only for actually *breaching* that contract, by asserting that Redmond is not directly liable, but is instead responsible under respondeat superior

for the actions of its employees. Thus, petitioner asserts, the employees constitute the requisite third parties for a valid interference claim.

The employees are only third parties if they were not acting within the scope of their employment. A municipal corporation, like any corporation, can act only through its agents, and when its agents act within the scope of their employment their actions are the actions of the city itself. *See* P. Mechem, *Outlines of the Law of Agency* §§ 361, 362 (4th ed. 1952). Thus, if Redmond's employees were acting within the scope of their employment, their actions were Redmond's, and no interference claim will lie.

If, on the other hand, the actions of the employees were not within the scope of employment, then they are third parties potentially liable in their individual capacities. However, if these actions were outside the scope of employment, their actions are not chargeable to Redmond and Redmond cannot be held liable under the doctrine of respondeat superior. *Hein,* at 600; *Nelson v. Broderick & Bascom Rope Co.,* 53 Wn.2d 239, 332 P.2d 460 (1958); 2 F. Harper & F. James, *The Law of Torts* § 26.6, at 1374 (1956).

Thus, under no set of circumstances can Redmond be liable for interference here. It is unnecessary to decide whether each action of which petitioner complains is within or outside the scope of employment; it is sufficient to note that each action cannot be both within and outside that scope simultaneously. If the employees were within the scope of their employment, the interference claim falls for lack of a third party; petitioner's remedy, if his discharge was wrongful, is in contract. If the employees were not within the scope of their employment, they might be individually liable for interference, but Redmond bears no responsibility for their private actions. Because petitioner brought only an interference claim, and named only Redmond as a defendant, the Court of Appeals correctly concluded that he has not stated an actionable claim in this lawsuit.

Our recent decision in *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 564 P.2d 1137 (1977), is not at variance with these principles. Although the parties to that lawsuit were also parties to a contract, it was not that contract upon which the claim of interference was based. We held in that case that the defendant's intentional and outrageous action in breaching that contract interfered with the business relationship that the plaintiffs had with their customers. The defendant was a third party as to that relationship, and thus not subject to contractual actions based upon it. Here, in contrast, petitioner had a potential action against Redmond for breach of the same contract which has been the subject of this interference claim, if he could have proved discharge in violation of that contract. He did not assert that claim, but instead asserted one which does not constitute adequate legal grounds for recovery.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.